UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KRISTYNA HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-1664-JCH |
| | ) |
| EXPRESS SCRIPTS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff admits to participating in a vulgar, obscene and racist Facebook conversation about other Express Scripts employees, which violated Defendant Express Scripts'[1] Social Media Policy. Despite her allegations of race and disability discrimination and retaliation for taking a leave of absence, Plaintiff cannot establish Express Scripts' reason for her discharge—the Social Media Policy violation—is pretext. Accordingly, the Court should enter summary judgment for Express Scripts.

**FACTS[2]**

On October 21, 2013, Express Scripts hired Plaintiff, who is African-American, as a Prior Authorization Representative. SUMF ¶¶ 1-2. Plaintiff was an at-will employee. SUMF ¶ 3. Plaintiff requested a leave of absence from Express Scripts in 2015, which Express Scripts granted. SUMF ¶ 4. On May 18, 2015, Plaintiff transitioned to the position of Patient Services Coordinator II. SUMF ¶ 5. Supervisor Mandi Harris, who is white, interviewed Plaintiff and hired her into the

---

[1] Plaintiff incorrectly identifies Defendant as Express Scripts. Plaintiff was employed by Express Scripts Services Company.

[2] Express Scripts has filed a Statement of Uncontroverted Material Facts ("SUMF") contemporaneously herewith, but provides this summary for the convenience of the Court.

1

Patient Services Coordinator II position. SUMF ¶¶ 6-7. In 2016, Plaintiff applied for the position of Insurance Reimbursement Specialist, and was interviewed by Zolorale ("Zee") Green, who is black/African-American. SUMF ¶¶ 8, 11. On September 13, 2016, Ms. Green offered Plaintiff the position of Insurance Reimbursement Specialist. SUMF ¶ 9. Plaintiff accepted the Insurance Reimbursement Specialist position and began reporting to Ms. Green on September 26, 2016. SUMF ¶ 10.  On November 21, 2016, Ms. Harris began directly supervising Ms. Green, while Ms. Green was directly supervising Plaintiff. SUMF ¶ 12.

On March 3, 2017, Plaintiff requested and was granted another leave of absence from Express Scripts' third-party leave administrator. SUMF ¶ 13. Plaintiff alleges her 2017 leave was for stress and depression. SUMF ¶ 14. Prior to taking her leave of absence, Plaintiff never told her supervisors about her depression or any disability. SUMF ¶ 16. In fact, Plaintiff never told her supervisors that she suffered from depression or any disability at any time during her employment. SUMF ¶¶ 17-18.

On March 23, 2017, Plaintiff participated in a vulgar, obscene, and racist Facebook conversation with two other Insurance Reimbursement Specialists, Adarine Shaw and Liana Page. SUMF ¶¶ 23-25, 30-32. Among other inappropriate and racist comments in the Facebook conversation, Ms. Page wrote, "Yo cast iron skillet black ass supervisor I hate him[,]" and Ms. Shaw wrote, "Yep.. I don't like the silver back gorilla lookn mf either.. Wat he do tho???" SUMF ¶¶ 24-25. Ms. Shaw and Ms. Page were referring to D.J. Williams, who was Ms. Shaw's supervisor at the time and had previously been Ms. Page's supervisor. SUMF ¶¶ 26-28. D.J. Williams is African-American. SUMF ¶ 29. After Ms. Shaw's racist comment stating "Yep.. I don't like the silver back gorilla lookn mf either[,]" Plaintiff wrote in the Facebook conversation, "Me either[.]" SUMF ¶ 30. Ms. Page then wrote another vulgar and obscene comment stating, "He on some hoe

2

shit. He got the right one tho cuz I will blow his unhealthy ass down. Always runnin and telling like a lil bitch [. . .] SHUT UP BITCH whining ass[.]" SUMF ¶ 31. Following Ms. Page's comment ending with "SHUT UP BITCH whining ass[,]" Plaintiff added a vulgar and obscene comment with three emojis of the middle finger followed by six laughing emojis. SUMF ¶ 32. In her deposition, Plaintiff explained this comment to mean, "fuck that shit, laugh at it." SUMF ¶ 32.

Express Scripts' Social Media Policy expressly prohibits "[p]ost[ing] or display[ing] comments about co-workers, supervisors or the Company that are vulgar, obscene, threatening, intimidating, maliciously false, or a violation of workplace policies against discrimination or harassment on account of race . . . or other protected class or characteristic." SUMF ¶ 22. On March 28, 2017, another Express Scripts employee, who is African-American, informed Ms. Harris of this Facebook conversation. SUMF ¶¶ 33-34. On March 29, 2017 and March 30, 2017, Ms. Harris and Human Resources employee Kristin Robertson met with Ms. Page and Ms. Shaw, respectively, regarding the Facebook conversation. SUMF ¶ 35. Ms. Shaw and Ms. Page were shown the Facebook posts and admitted to engaging in the conversation about other Express Scripts employees. SUMF ¶ 37. Ms. Shaw and Ms. Page were placed on unpaid leave immediately following the meetings and were subsequently discharged for violating the Company's Social Media Policy. SUMF ¶¶ 38-39. Ms. Shaw and Ms. Page were notified of their terminations on April 3, 2017. SUMF ¶ 40.

On April 24, 2017, Plaintiff returned from her leave of absence. SUMF ¶ 41. Upon her return, Ms. Harris and Ms. Green met with Plaintiff regarding the Facebook conversation. SUMF ¶ 42. Plaintiff admitted to engaging in the Facebook conversation with Ms. Page and Ms. Shaw. SUMF ¶ 43. Ms. Harris placed Plaintiff on unpaid leave following their meeting. SUMF ¶ 44.

3

Later that day, Ms. Harris notified Plaintiff that her employment was terminated as a result of her violation of the Social Media Policy. SUMF ¶ 45.

## ARGUMENT

**A.    Summary Judgment Should be Granted Because Plaintiff Lacks Evidence to Support One or More Elements of Her Cause of Action.**

Pursuant to Fed. R. Civ. P. 56(c), "[s]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010). To avoid summary judgment, the plaintiff must do more than simply show that there is some metaphysical doubt as to the material facts, but must instead come forward with specific facts showing that there is a genuine issue for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the plaintiff, summary judgment should be granted. *Id.* Because Plaintiff cannot support the elements of her claims, Express Scripts is entitled to summary judgment. Indeed, the evidence affirmatively demonstrates that Plaintiff's claims fail as a matter of law.

**B.    Plaintiff Cannot Establish that Her Discharge was Motivated by Race Discrimination.**

Under Title VII, Plaintiff must establish a *prima facie* case, i.e., that (1) she is in a protected class; (2) she was meeting Express Scripts' legitimate expectations; (3) she suffered an adverse employment action; and (4) there were circumstances permitting an inference of discrimination. *See Anderson*, 606 F.3d at 520. If she does so, since Express Scripts presents a non-discriminatory reason for her discharge, Plaintiff must show that reason was pretext for discrimination or her claims will fail. *Id.* at 521.

Plaintiff cannot meet the second element of a *prima facie* case because she violated Express Scripts' Social Media Policy. Plaintiff admits that she participated in a vulgar, obscene, and racist

4

Facebook conversation with two other Express Scripts employees in which, among other inappropriate comments, they discussed an Express Scripts supervisor by saying, "Yo cast iron skillet black ass supervisor I hate him[,]" and, "Yep.. I don't like the silver back gorilla lookn mf either.. Wat he do tho???" SUMF ¶¶ 24-26. Plaintiff added, "Me either[.]" SUMF ¶ 30. After Plaintiff wrote, "Me either[,]" Ms. Page wrote another vulgar and obscene comment stating, "He on some hoe shit. He got the right one tho cuz I will blow his unhealthy ass down. Always runnin and telling like a lil bitch [. . .] SHUT UP BITCH whining ass[.]" SUMF ¶ 31. Following this comment by Ms. Page, Plaintiff added three emojis of the middle finger and six laughing emojis. SUMF ¶ 32. Plaintiff meant the emojis to say, "fuck that shit, laugh at it." SUMF ¶ 32. Express Scripts' Social Media Policy expressly prohibits "[p]ost[ing] or display[ing] comments about co-workers, supervisors or the Company that are vulgar, obscene, threatening, intimidating, maliciously false, or a violation of workplace policies against discrimination or harassment on account of race . . . or other protected class or characteristic." SUMF ¶ 22. Plaintiff's comments agreeing with her co-workers' vulgar, obscene and racist description of their dislike of an Express Scripts supervisor and her addition of vulgar emojis violated the Social Media Policy, and thus, she was not meeting Express Scripts' legitimate expectations.

      Plaintiff also cannot meet the fourth element of a *prima facie* case because she has no evidence that her discharge happened under circumstances permitting an inference of discrimination. *See Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005) (affirming summary judgment because the employee "offered no evidence, other than her own bald assertions" of race discrimination); *Conner v. PM Res., Inc.*, No. 499CV1959, 2001 WL 15828, at *3 (E.D. Mo. Jan. 4, 2001) (granting summary judgment because the plaintiff failed to present evidence of race discrimination or "any inference of improper motivation"). Here, Ms. Harris, who notified Plaintiff

5

of her termination, had previously hired her for a position at Express Scripts. SUMF ¶¶ 6, 45. Additionally, Plaintiff's direct supervisor, Ms. Green, who is also African-American, approved a raise for Plaintiff shortly before her violation of the Social Media Policy. SUMF ¶¶ 11, 21. Further, during her employment with Express Scripts, no one ever made comments to Plaintiff about her race or told her that someone made a comment about her race. SUMF ¶¶ 52-53. And, Plaintiff cannot identify any white employees who were treated better than her or the other African-American employees discharged by Ms. Harris. SUMF ¶ 51. Finally, Plaintiff never reported any discrimination of any kind while she was employed by Express Scripts. SUMF ¶ 49.

Accordingly, Plaintiff cannot meet her burden and her race discrimination claim should be dismissed.

**C.     Plaintiff Cannot Establish that Her Discharge was Motivated by Disability Discrimination.**

In order to establish a *prima facie* case of disability discrimination under the Americans with Disabilities Act ("ADA"), a plaintiff must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job (with or without a reasonable accommodation); and (3) a causal connection between an adverse employment action and the alleged disability. *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 544 (8th Cir. 2018). If the plaintiff succeeds in proving her *prima facie* case, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. *Id.* The burden then shifts back to the Plaintiff to show the employer's reason was pretext for intentional discrimination. *Id.*

The core of every ADA disability definition requires Plaintiff to prove she has a physical or mental impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(1); *see also* 42 U.S.C. § 12112(2). Although the ADA's definition of "disability" is broad,

6

it is not unlimited. Equal Employment Opportunity Commission regulations specify that "not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii); *see also Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1064-1065 (W.D. Ark. 2017). Further, even where a plaintiff is approved for a leave of absence, that fact alone is insufficient to establish the plaintiff is disabled or had anything more than a temporary condition that is presumptively not a disability. *See* 29 C.F.R. § 825.702 ("disability" under the ADA and "serious health condition" under the Family and Medical Leave Act "are different concepts and must be analyzed separately").

Plaintiff alleges her disabilities were stress and depression. SUMF ¶ 14. Stress is not a *per se* disability under the ADA. *See Johnson v. Special Sch. Dist.*, No. 4:18CV53JCH, 2018 WL 2163647, at *11 (E.D. Mo. May 10, 2018) ("occupational stress is not a disability as defined by . . . the ADA"); *Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995) (employer was not obligated to assume employee had a disability even though it had knowledge of employee's stress and extended absence from work). Additionally, while Plaintiff's short term disability benefits were initially granted for three weeks, benefits were ultimately denied thereafter on the basis that she was not suffering from a disability and not pursuing the prescribed treatment. SUMF ¶ 20.

Even if Plaintiff could establish she has a disability as defined by the ADA, she cannot establish a *prima facie* case because she cannot show a causal connection existed between her discharge and her alleged disability. Plaintiff never told any of her supervisors that she suffered from depression, and they were not aware that she suffered from depression or any disability. SUMF ¶¶ 16-18. Plaintiff is not aware of any negative comments made about her disability while she was on leave, and in fact, cannot identify a single comment made about her alleged disability. SUMF ¶¶ 19, 54. Plaintiff also cannot identify anyone else who was discriminated against because

7

of a disability. SUMF ¶ 55. Additionally, Ms. Page and Ms. Shaw, who were discharged for participating in the same Facebook conversation as Plaintiff, did not have any known disability, had never requested an accommodation for a disability, and had never taken any medical leave of absence. SUMF ¶¶ 57-58.

There is no evidence that Express Scripts treated Plaintiff any differently than anyone outside her alleged protected class. Plaintiff provides not a scintilla of evidence to give rise to an inference of animus and, as such, Express Scripts is entitled to summary judgment.

**D.      Plaintiff Cannot Prove that Her Discharge Was in Retaliation for Protected Activity.**

To establish a *prima facie* case of retaliation under the ADA, Plaintiff must show (1) she engaged in protected conduct; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007). The *McDonnell Douglas* burden-shifting analysis is applied in the context of an ADA retaliation claim. *Id.*

Under the ADA, a request for a leave of absence may be considered a request for a reasonable accommodation, which is a protected activity. *Ernst v. Wal-Mart Stores, Inc.*, 2018 U.S. Dist. LEXIS 76280 (E.D. Mo. May 3, 2018). But, Plaintiff "must establish 'more than a temporal connection between [her] protected activity and an adverse employment action' in order to create a 'genuine factual issue on retaliation.'" *See Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) (quoting *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 716 (8th Cir. 2000)). While Express Scripts acknowledges Plaintiff was discharged on the same day she returned from leave, Express Scripts allowed Plaintiff to finish her leave while it discharged Ms. Shaw and Ms. Page for the same reason during Plaintiff's leave. SUMF ¶¶ 39-41, 45.

8

Since timing alone is insufficient to establish a causal connection, Plaintiff must offer some other evidence indicating that her discharge had anything to do with her leave of absence. But Plaintiff cannot. Again, Ms. Shaw and Ms. Page were discharged for the same reason as Plaintiff and had not taken a medical leave of absence or requested any other disability accommodation. SUMF ¶¶ 39, 45, 58. Additionally, Plaintiff cannot identify any other Express Scripts employees who were retaliated against. SUMF ¶ 56.

Accordingly, Plaintiff cannot establish her claim of retaliation, and the Court should grant summary judgment to Express Scripts.[3]

### E. Express Scripts Had a Legitimate, Non-Discriminatory, Non-Retaliatory Reason for Plaintiff's Discharge.

The burden of establishing a legitimate, non-discriminatory reason "is not onerous." *Bone v. G4S Youth Services, LLC,* 686 F.3d 948, 954. (8th Cir. 2012). Courts have repeatedly held that violations of company policy are legitimate, non-discriminatory reasons for termination. *See e.g., Matthews v. Bank of America*, No. 4:10CV1097 JAR, 2011 WL 6884795, at *7 (E.D. Mo. Dec. 29, 2011) (granting summary judgment where plaintiff failed to provide requested medical evidence to support her absence, noting plaintiff's failure to comply with defendant's policy is a legitimate non-discriminatory reason for terminating her employment); *Norman v. Union Pacific R.R. Co.,* 606 F.3d 455, 460 (8th Cir. 2010) (affirming summary judgment where company's decision to discharge plaintiff was based on her failure to submit a return to work release mandated

---

[3] It is unclear from Plaintiff's Complaint under which law she is bringing her retaliation claim. Defendant assumes she is bringing her retaliation claim under the ADA. Should she bring the retaliation claim under Title VII, there is no evidence that Plaintiff complained of race discrimination, so she did not engage in a protected activity, and her retaliation claim would fail.  If Plaintiff is bringing her retaliation claim under the Family and Medical Leave Act, her retaliation claim would fail for the same reasons it fails under the ADA—there is no causal connection between her leave of absence and her discharge.

by company policy); *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) (noting violation of company policy is a legitimate reason for termination).

Even if Plaintiff could establish a *prima facie* case, Express Scripts articulated a legitimate reason for her discharge: her violation of the Social Media Policy. Express Scripts' Social Media Policy expressly prohibits "[p]ost[ing] or display[ing] comments about co-workers, supervisors or the Company that are vulgar, obscene, threatening, intimidating, maliciously false, or a violation of workplace policies against discrimination or harassment on account of [any] protected class or characteristic." SUMF ¶ 22. Plaintiff admits to participating in a vulgar, obscene, and racist Facebook conversation with two co-workers where they discussed another African-American Express Scripts employee (one of their supervisors), by writing, "Yo cast iron skillet black ass supervisor I hate him[,]" and "Yep.. I don't like the silver back gorilla lookn mf either.. Wat he do tho???" SUMF ¶¶ 24-29. Plaintiff added, "Me either[.]" SUMF ¶ 30. And, following Ms. Page's vulgar and obscene comment, "He on some hoe shit. He got the right one tho cuz I will blow his unhealthy ass down. Always runnin and telling like a lil bitch [. . .] SHUT UP BITCH whining ass[,]" Plaintiff wrote three emojis of the middle finger followed by six laughing emojis. SUMF ¶¶ 31-32. Plaintiff explained that her emojis meant "fuck that shit, laugh at it." SUMF ¶ 32. This conversation clearly violated the Social Media Policy, as it is vulgar, obscene, and discriminatory on the basis of the supervisor's race.

Accordingly, Express Scripts had a legitimate, non-discriminatory, and non-retaliatory reason for terminating Plaintiff's employment.

**F.     Plaintiff Cannot Show that the Reason for Her Discharge was Pretext.**

Once Express Scripts establishes a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to prove the stated reason is a mere pretext for

unlawful discrimination. *See Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014). "To survive summary judgment, an employee must both discredit the employer's articulated reason and demonstrate the 'circumstances permit a reasonable inference of discriminatory animus.'" *Id.* (citing *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 855 (8th Cir. 2011)). "There are two primary ways to show pretext . . . . A plaintiff may present evidence the proffered reason has no basis in fact or a prohibited reason is more likely." *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019) (internal quotations omitted). "Ultimately, the plaintiff must show that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990, 993 (8th Cir. 2019) (internal quotations omitted).

Pretext can be shown if "similarly situated" employees outside the class were treated better. *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821 (8th Cir. 2017). They must be "similarly situated in all relevant respects" (a "rigorous" test) and have "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019). Plaintiff alleges Ms. Harris discharged other African-American employees, but she cannot identify any white employees who were treated better than the African-American employees discharged by Ms. Harris. SUMF ¶ 51.

A plaintiff can also establish pretext by showing the employer's proffered reason has "no basis in fact." *Liles*, 851 F.3d at 821. "The critical inquiry . . . is not whether the employee actually engaged in the conduct for which [s]he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Id.* While Plaintiff disagrees that her comments in the Facebook conversation were inappropriate, she does not deny

11

participating in the conversation. SUMF ¶ 43. Express Scripts determined her participation in the vulgar, obscene and racist conversation violated the Social Media Policy, and Plaintiff cannot prove that this reason for her termination is pretext.

Accordingly, all of Plaintiff's claims against Express Scripts fail, and the Court should grant summary judgment.

## CONCLUSION

"A plaintiff facing a summary judgment motion cannot 'get to a jury without any significant probative evidence tending to support the complaint.'" *Buettner*, 216 F.3d at 718 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Unsupported and conclusory allegations cannot defeat summary judgment[,]" and a plaintiff's claims fail where she does not offer "proof beyond speculation and conjecture." *Gibson*, 670 F.3d at 851 (internal quotations omitted). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* at 853 (quoting *Liberty Lobby*, 477 U.S. at 252). As Express Scripts has shown herein, Plaintiff's employment ended for one reason only – she violated the Social Media Policy. She simply does not have sufficient evidence of discriminatory or retaliatory animus on which a jury could reasonably find in her favor.

Because no genuine issues of material fact exist, Express Scripts is entitled to judgment as a matter of law on all of Plaintiff's claims. Express Scripts, therefore, respectfully requests that the Court enter summary judgment in its favor on all of Plaintiff's claims, pursuant to Fed. R. Civ. P. 56, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Eric A. Todd*
Eric A. Todd, #46919MO
Mallory S. Zoia #70377MO
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
Phone: (314) 802-3935
Facsimile: (314) 802-3936
eric.todd@ogletree.com
mallory.zoia@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, a copy of the foregoing was sent via U.S. Mail and electronic mail to the following:

Kristyna Hayes
5957 Ferris Ave.
St. Louis, MO 63120
(314) 359-5920
kbhayes73@gmail.com

*Pro se* Plaintiff

*/s/ Eric A. Todd*
Attorney for Defendant

43894012.4