UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KRISTYNA B. HAYES,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          No. 4:19CV1664 JCH
                                      )
EXPRESS SCRIPTS[1],                   )
                                      )
                                      )
            Defendant.                )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Express Scripts' Motion for Summary Judgment, filed August 28, 2020. (ECF No. 33). The motion is fully briefed and ready for disposition.

## BACKGROUND

On October 21, 2013, Defendant Express Scripts hired Plaintiff Kristyna Hayes, an African-American woman, as a Prior Authorization Representative. (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), ¶¶ 1, 2). Plaintiff requested and received a leave of absence from Express Scripts in 2015. (*Id.*, ¶ 4). On May 18, 2015, Plaintiff transitioned to the position of Patient Services Coordinator II. (*Id.*, ¶ 5).[2] In 2016, Plaintiff applied for the position of Insurance Reimbursement Specialist, and was interviewed by Zolorale ("Zee") Green, an African-American woman. (*Id.*, ¶¶ 8, 11). Ms. Green offered Plaintiff the position on September 13, 2016, and Plaintiff accepted the Insurance Reimbursement Specialist

---

[1] According to Defendant, Plaintiff incorrectly identified Defendant as Express Scripts. Defendant maintains Plaintiff was employed by Express Scripts Services Company. (*See* Defendant's Motion for Summary Judgment, P. 1 n. 1).

[2] Mandi Harris, a white female, interviewed Plaintiff and hired her into the Patient Services Coordinator II position. (Defendant's Facts, ¶¶ 6, 7).

position and began reporting to Ms. Green on September 26, 2016.  (*Id.*, ¶¶ 9, 10).  From November 21, 2016, to June 18, 2017, Ms. Harris directly supervised Ms. Green, and Ms. Green directly supervised Plaintiff.  (*Id.*, ¶ 12).

On March 3, 2017, Plaintiff was granted a requested leave of absence from Express Scripts by its third-party leave administrator, Sedgwick.  (Defendant's Facts, ¶ 13).  According to Plaintiff, the disabilities she suffered from at the time of her leave were stress and depression. (*Id.*, ¶ 14).  Plaintiff acknowledges that prior to taking her leave of absence in March, 2017, she never informed her supervisors that she suffered from depression or any disability.  (*Id.*, ¶¶ 16, 17).[3]  She asserts Defendant was aware that she had experienced several deaths in her family, was involved in an accident, and was having problems with her arm and wrist, however. (Plaintiff's Response to Defendant's Facts, ¶¶ 16-18).  While Plaintiff states Ms. Green noticed the change in Plaintiff's behavior and communication with peers, Defendant maintains neither Ms. Green nor Ms. Harris was aware that Plaintiff suffered from depression or any disability. (*Id.*; *see also* Defendant's Facts, ¶ 18).

Plaintiff's short term disability benefits for her leave of absence initially were granted from March 3 until March 27, 2017, but benefits ultimately were denied thereafter on the bases that Plaintiff was not suffering from a disability and was not pursuing the prescribed treatment. (Defendant's Facts, ¶ 20; Defendant's Exh. H).  During the period that Plaintiff was on a leave of absence, an approved raise for her went into effect.  (*See* Defendant's Facts, ¶ 21 and Plaintiff's response thereto).

On March 23, 2017, Plaintiff participated in a Facebook conversation with two other

---

[3] According to Plaintiff, her stress and depression issues were "personal and confidential between her and her medical providers."  (Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts ("Plaintiff's Response to Defendant's Facts"), ¶¶ 16-18).

Insurance Reimbursement Specialists, Adarine Shaw and Liana Page.  (Defendant's Facts, ¶ 23).

In part, the conversation went as follows[4]:

> Liana Page
> Yo cast iron skillet black ass supervisor[5] I hate him
>
> PeeChezz Shaw[6]
> Yep…I don't like the silver back gorilla lookn mf either..Wat he do tho???
>
> Kristyna Hayes
> Me either
>
> Liana Page
> He on some hoe shit.  He got the right one tho cuz I will blow his unhealthy ass down.  Always runnin and telling like a lil bitch
>
> Liana Page
> (In my bitch Vc) she didn't respond to my oc she just got up and walked up away.  I looked at her schedule and seen she was on break but why she just couldn't say anything see I'm not going for this.  SHUT UP BITCH whining ass
>
> Kristyna Hayes
> {Plaintiff responds with three emojis of the middle finger followed by six laughing emojis}[7]

(*See* Defendant's Exh. J, P. 2).[8]

On March 28, 2017, an African-American Express Scripts employee informed Ms. Harris

---

[4] The Court has reproduced the Facebook conversation as it appears in Defendant's Exhibit J. While this apparently represents an edited version of the full conversation, Plaintiff does not dispute its accuracy.

[5] The parties agree the supervisor referenced in the conversation was D.J. Williams, an African-American man.  (*See* Defendant's Facts, ¶¶ 26, 29, and Plaintiff's Response thereto).  Mr. Williams supervised Ms. Shaw at the time of the conversation, and had previously supervised Ms. Page.  (*Id.*, ¶¶ 27, 28).

[6] Ms. Shaw apparently went by the moniker PeeChezz Shaw on Facebook.

[7] During her deposition, Plaintiff explained that her emojis meant, "fuck that shit, laugh at it", in response to what Page and Shaw were discussing.  (Defendant's Facts, ¶ 32, quoting Plaintiff's Dep., Defendant's Exh. A at 151:10-152:3).

[8] The Facebook conversation continues, with all three members utilizing coarse language at times.

of the Facebook conversation, and provided her with a copy.  (Defendant's Facts, ¶¶ 33, 34).[9]

On March 29, 2017, and March 30, 2017, Ms. Harris and Ms. Kristin Robertson, a white woman,

met with Liana Page and Adarine Shaw, respectively, regarding the Facebook conversation.  (*Id.*,

¶¶ 35, 36).[10]   Ms. Shaw and Ms. Page admitted to engaging in the conversation about other

Express Scripts employees, and were placed on unpaid leave immediately following the

meetings.  (*Id.*, ¶¶ 37, 38).   Ms. Shaw and Ms. Page subsequently were discharged from Express

Scrips for violating the following provision of Defendant's Social Media Policy:

> While engaging in Social Media Activities, employees may not:…
>
> Post or display comments about co-workers, supervisors or the Company
> that are vulgar, obscene, threatening, intimidating, maliciously false, or a
> violation of workplace policies against discrimination or harassment on
> account of race, religion, sex, nationality, disability, age or other protected
> class or characteristic.   This restriction also applies to personal social
> media usage.

(Defendant's Facts, ¶ 39; *see also* Defendant's Exh. I, P. 9).[11]

On April 24, 2017, Plaintiff returned to work from her leave of absence.  (Defendant's

Facts, ¶ 41).  She met with Ms. Harris and Ms. Green regarding the Facebook conversation that

same day.  (*Id.*, ¶ 42).  Plaintiff admitted to engaging in the Facebook conversation with Liana

Page and Adarine Shaw, and Ms. Harris placed her on unpaid leave following the meeting.  (*Id.*,

¶¶ 43, 44).  Later that day, Ms. Harris notified Plaintiff that her employment was terminated as a

---

[9] Plaintiff maintains the informant was a member of leadership, and was not a Facebook friend of
Plaintiff's.  (Plaintiff's Response to Defendant's Facts, ¶¶ 33, 34).
[10] Plaintiff remained on leave of absence for stress during this time.  (*See* Plaintiff's Response to
Defendant's Facts, ¶ 37).
[11] Plaintiff denies being aware that Express Scripts had a Social Media Policy.  (*See* Plaintiff's
Response to Defendant's Facts, ¶ 22).

result of her violation of the above referenced Social Media Policy provision.  (*Id.*, ¶ 45).[12]

On July 10, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, in which she alleged discrimination based on race and disability, and retaliation.  (*See* ECF No. 1-3).  Plaintiff's Charge stated in its entirety as follows:

> On or about October 21, 2013 I was hired by the above named employer. My position title is Insurance Reimbursement Specialist and my former supervisor is Zee Green, Insurance Reimbursement Supervisor.
>
> On or about March 3, 2017 I took leave for my disability.  On or about April 24, 2017 I returned from this leave and was immediately discharged by Mandy Harris, Program Supervisor for allegedly violating my employer's social media policy while on leave, which I deny.  I was advised that while I was on leave for my disability several negative comments were made by my employer regarding disability and need for a reasonable accommodation and I am aware that Mandy Harris has a practice of treating Black employees less favorably than White employees. My performance was always at least satisfactory and I had no prior record of discipline.  I believe that I was subjected to discharge because of my race, disability, and in retaliation for my need for, and receipt of, a reasonable accommodation for my disability.
>
> For the above stated reasons I believe that I have been subjected to discrimination based on my disability and retaliation for participating in protected activity in violation of the Americans with Disabilities Act of 1990, as amended, and discrimination based on my race (Black) in violation of Title VII of the Civil Rights Act of 1967 (sic), as amended.

(*Id.*).

Plaintiff filed her Employment Discrimination Complaint in this Court on June 10, 2019. (ECF No. 1).   In her Complaint Plaintiff lodges the following allegations, based on discrimination under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended ("ADA"), and retaliation:

> On April 24, 2017, I was terminated from Express Scripts on my first day

---

[12] Plaintiff asserts Defendant made the decision to terminate Plaintiff's employment prior to her returning to work and meeting with Ms. Harris and Ms. Green.  (*See* Plaintiff's Response to Defendant's Facts, ¶¶ 44, 45).

back to work from a two month stress leave.  Prior to my leave, I had not had any type of discipline records and my performance was always satisfactory or above.  Many black employees had been getting fired, not able to get promotions and being mistreated.  All the employees I am aware of that experienced this unfair behavior were under supervision of the same lady and their termination papers were all signed by the lady's friend who was in HR.  I was told I violated the company's social media policy, which I deny.  This incident supposedly took place while I was on my stress leave with company.  The first part of my leave I was paid, then received letter stating I was no longer eligible to receive payment under my FMLA disability claim and needed to return to work.  I was out of work for 2 months and only received pay for one month, then was terminated first day I returned to work.

(*Id.*, PP. 5-6).

As stated above, Defendant filed the instant Motion for Summary Judgment on August 28, 2020, claiming there exist no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.  (ECF No. 33).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*,

477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of its pleadings.  *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255.  The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  *Id*. at 249.

## DISCUSSION

I.   **Race Discrimination**

When analyzing a Title VII race discrimination claim, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this framework, Plaintiff first must establish a prima facie case of discrimination.  "A prima facie case of discrimination requires that the plaintiff '(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'"  *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)).  Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  "If the employer meets this burden, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination."  *Id.* (internal quotation marks and citation omitted).

Upon consideration, the Court finds Plaintiff fails to establish a prima facie case of race discrimination.  While Plaintiff is a member of a protected class, she fails to show she met her

employer's legitimate expectations, as she violated Express Scripts' Social Media Policy.  As noted, Plaintiff admits she participated in the Facebook conversation detailed above, which Defendant found to be vulgar, obscene and racist.  In response, Plaintiff offers only her own opinion that her remarks were non-violative of Defendant's policy.  Plaintiff's assertions are "insufficient to create a genuine issue of material fact, where such assertions are totally unsupported by the record."  *Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005) (citing *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994) (affirming grant of summary judgment because nonmoving party's only evidence to rebut motion was unsubstantiated statements in deposition)).  *See also Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821 (8th Cir. 2017) (internal quotation marks and citation omitted) ("As for whether [Defendant's] proffered reason had a legitimate basis in fact, the critical inquiry…is not whether the employee actually engaged in the conduct for which [she] was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.").

Even if Plaintiff had established a prima facie case, her race discrimination case would still fail.  Defendant here offered a legitimate, nondiscriminatory reason for Plaintiff's discharge, namely, her participation in a prohibited social media interaction, and Plaintiff offers nothing tending to give rise to an inference of unlawful discrimination.  *See Shanklin*, 397 F.3d at 603.  To the contrary, Plaintiff admits that Ms. Harris hired her into the Patient Services Coordinator II position in 2015, and Ms. Green hired her into the Insurance Reimbursement Specialist position in 2016.  Furthermore, Ms. Green approved a raise for Plaintiff only months before her termination.  Under these circumstances, an inference arises that the decision was not motivated by discriminatory animus.  *See Butler v. Sivyer Steel Corp.*, 507 Fed. Appx. 642 (8th Cir. 2013)

(evidence showing the same person fired plaintiff eleven months after hiring him gives rise to strong inference that discrimination did not occur); *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (strong inference that no discrimination occurred exists when same actor hires and fires employee in short time period).

## II.    <u>Disability Discrimination</u>

Claims of disability under the ADA are also analyzed under the *McDonnell Douglas* burden-shifting framework.   Thus, Plaintiff first must establish a prima facie case of discrimination by demonstrating "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job [with or without a reasonable accommodation]; and (3) a causal connection between an adverse employment action and the disability."  *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) (internal quotation marks and citation omitted).  If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the employer is able to do so, "[t]burden then returns to the plaintiff to show that the employer's proffered reason was a pretext for discrimination." *Id.* (citation omitted).

Upon consideration, the Court finds Plaintiff cannot establish a causal connection between the termination and her alleged disability.[13]  As noted above, Defendant maintains it terminated Plaintiff's employment because she participated in a prohibited social media exchange.  The other two participants in the conversation, Liana Page and Adarine Shaw, were also fired after admitting their involvement, and Plaintiff agrees that neither she, Ms. Harris, Ms. Green, nor Ms. Robertson was aware of Ms. Page or Ms. Shaw having any disability.  (*See*

---

[13] Defendant disputes that Plaintiff suffered from a disability in the first instance.

Defendant's Facts, ¶¶ 39, 57).[14]  Plaintiff thus fails to establish a prima facie case of disability discrimination, and so this portion of Defendant's Motion for Summary Judgment must be granted.[15]

## III.   Retaliation

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  *See* 42 U.S.C. § 2000e-3(a).  Pursuant to the *McDonnell Douglas* burden-shifting framework, the employee has the initial burden of establishing a prima facie case of retaliation, which she meets by showing that, "(1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct."  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (citation omitted).  "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden then shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action."  *Id.* (internal quotation marks and citations omitted).

---

[14] Express Scripts maintains it has no record of Ms. Shaw or Ms. Page ever requesting an accommodation for a disability or taking a medical leave of absence.  (*See* Defendant's Facts, ¶ 58, citing Robertson Declaration, Defendant's Exh. D, ¶ 17).

[15] As further support for its ruling, the Court finds Plaintiff's disability discrimination claim also fails for the same reason as her race discrimination claim.  In other words, even assuming Plaintiff established a prima facie case of discrimination, Defendant presented a legitimate, nondiscriminatory reason for Plaintiff's discharge, namely, her participation in a prohibited social media interaction, and Plaintiff offers nothing tending to give rise to an inference of unlawful discrimination.

Once again the Court finds that even assuming Plaintiff can establish a prima facie case of retaliation, Defendant here offered a legitimate, nondiscriminatory reason for Plaintiff's discharge, namely, her participation in a prohibited social media interaction, and Plaintiff offers nothing tending to give rise to an inference of unlawful discrimination.  To the contrary, Plaintiff admits an earlier awarded raise went into effect during the period that Plaintiff was on a leave of absence for an alleged disability.  Furthermore, as noted above both other participants in the social media exchange were fired, despite the undisputed fact that neither had engaged in protected activity under the ADA by requesting or receiving a leave of absence due to a disability.  Under these circumstances, an inference arises that the decision to fire Plaintiff was not motivated by discriminatory animus.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice.  An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Discovery (ECF No. 52) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery (ECF No. 55) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions pursuant to Rule 37(B) (ECF No. 57) is **DENIED** as moot.

Dated this 5th Day of February, 2021.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE